**FILED**

Jun 21 2024

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY        s/ SusanNyamanjiva        **DEPUTY**

ORDERED UNSEALED on **07/31/2024    s/ Alexandra**

SEA~~X~~ED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

February 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>ZHAO WANG (1),<br>   aka "Oscar,"<br>JIANDONG CHEN (2),<br>   aka "Little Tiger,"<br>JUN LI (3),<br>XIN WANG (4),<br>YOUFEI GONG (5),<br>   aka "Mark,"<br><br>          Defendants. | Case No. _____ '24 CR1317 RSH<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Secs. 1349 and 2326 – Conspiracy to Commit Mail and Wire Fraud; Title 18, U.S.C., Secs. 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(h) – Conspiracy to Launder Monetary Instruments; Title 18, U.S.C., Secs. 981(a)(1)(C), 982(a)(1), 982(a)(2)(a), 2328 and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The grand jury charges:

INTRODUCTION

1. A **technical support scam**, or tech support scam, is a sophisticated fraud scheme where criminals claim to offer a legitimate technical support service. The criminals contact victims in a variety of ways, including through electronic instant messages on computers and phones or via fake "help lines" advertised on websites owned by the criminals. These criminals use social engineering and a variety of

PKM:cms:San Diego:6/21/24

confidence tricks to persuade their victims that there are problems on their computer or mobile device, when there are no actual issues with the victim's device. They will often persuade the victim to purchase products or services to fix the fictitious "problems" that they claim to have found. Tech support scams are often combined with other types of scams, such as a refund scam or a government impersonation scam to extract additional funds from the victim.

2. A **bank impersonation scam** is a fraud scheme where criminals pretend to be a bank employee for the purpose of directing the victim to transfer funds from out of the victim's bank account to the criminals. In some bank impersonation cases, the criminals inform the victim that his/her bank accounts have been compromised or identities have been stolen and direct the victim to transfer the victim's money elsewhere for safe keeping. The criminals then direct the victim to send funds to accounts controlled by the criminals or to purchase precious metals and to deliver that money to the criminals.

3. A **government impersonation scam** is a fraud scheme where criminals pretend to be a government employee for the purpose of directing the victim to transfer funds from out of the victim's bank account to the criminals. The criminals use a variety of social engineering techniques to gain the victim's trust and thereafter to divest the victim of his/her money.

4. A **refund scam** is a method used in fraud schemes where criminals will use social engineering techniques first to gain the victim's trust, then to convince the victim that he/she has accidentally received an "over-refund," a portion of which the victim is instructed to return. This often occurs through social engineering where the victim is told he/she is entitled to a small refund, for example, from a retailer for

an alleged unauthorized charged. While pretending to process the refund, the victim is accidentally over-refunded money. The criminals will then instruct the victim to send the alleged over-refunded money through wire transfers, express mail delivery, or other cash equivalents to the criminals. In reality, the victim has not received any money, and the victim ends up sending his/her own money to the criminals. Refund scams are often layered with other scams, such as tech support scams.

## COUNT 1

### (Conspiracy to Commit Wire and Mail Fraud)

### [18 U.S.C. §§ 1349, 2326]

5.    Paragraphs 1 to 4 are re-alleged and incorporated herein.

### THE CONSPIRACY

6.    Beginning on a date unknown to the grand jury, but at least since 2021, and continuing up to and including the date of this Indictment, within the Southern District of California and elsewhere, defendants ZHAO WANG, aka "Oscar," JIANDONG CHEN, aka "Little Tiger," JUN LI, XIN WANG and YOUFEI GONG, aka "Mark," together with each other and with others known and unknown to the grand jury, knowingly and intentionally conspired to commit the following offenses:

a.    **wire fraud**, in violation of Title 18, United States Code, Section 1343, that is, to devise a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds; and

b.    **mail fraud**, in violation of Title 18, United States Code, Section 1341, that is, to device a material scheme and artifice to

3

defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, knowingly and with intent to defraud, deposited and caused to be deposited, and received therefrom, packages that were sent and delivered by private and commercial interstate carriers.

### MANNER AND MEANS

7. As part of the conspiracy, defendants ZHAO WANG, aka "Oscar," JIANDONG CHEN, aka "Little Tiger," JUN LI, XIN WANG and YOUFEI GONG, aka "Mark," and their co-conspirators operated a series of tech support, bank impersonation, government impersonation, and refund scams targeting elderly victims throughout the United States, including in the Southern District of California.

8. As part of the conspiracy, the conspirators contacted putative victims through unsolicited interstate and foreign wire communications, including pop-up ads, emails and phone calls. These unsolicited communications were made with the purpose of getting the victims to call the co-conspirators at a call center operating tech support, government impersonation, bank impersonation and/or refund scams.

9. As part of the conspiracy, the conspirators would use social engineering techniques to build trust with the victim. In many instances, conspirators would have the victims download commercially available remote desktop software, which the conspirators would use to gain access to victims' computers.

10. As part of the conspiracy, after building trust with a victim based on fraudulent pretenses, the conspirators would use tech support, government impersonation, bank impersonation and/or refund scams to induce victims to send money to other members of the conspiracy,

4

including defendants, via wire transfers and/or money-laden packages sent through the mail, via private and commercial interstate carriers, to locations throughout Southern California, including the Southern District of California, Nevada, and elsewhere.

11. As part of the conspiracy, the defendants and their conspirators would provide fictitious names and the address of a retail location that could receive express mail packages to co-conspirators who were talking directly with victims. Victims were then instructed to send money-laden packages to the fictitious names and the addresses provided by the defendants.

12. As part of the conspiracy, the defendants and their co-conspirators retrieved money sent by victims via express mail carriers by using false identifications and driver's licenses matching the addressee names on the victims' money-laden packages.

13. As part of the conspiracy, the defendants targeted individuals over the age of 55 with a campaign that included electronic messages, telephone calls, and text messages to induce the purchase of goods and services. And more than 10 persons over the age of 55 were victimized by the defendants during the course of their campaign.

14. The losses incurred affected financial institutions where funds on deposit were withdrawn based on fraudulent representations by the defendants and their co-conspirators, which resulted in financial institutions not having additional funds on deposit for business and income purposes. These included federally insured banks located in the Southern District of California.

15. As part of the conspiracy, the defendants and their conspirators received wire transfers from the victims of the scheme
//

5

including to federally insured bank accounts operated and controlled by the defendants and their co-conspirators.

All in violation of Title 18, United States Code, Sections 1349 and 2326.

## Count 2
### (Conspiracy to Launder Monetary Instruments)
### [18 U.S.C. § 1956(h)]

16. Beginning on a date unknown to the grand jury, but at least since 2021, and continuing up to and including the date of this Indictment, within the Southern District of California, and elsewhere, defendants ZHAO WANG, aka "Oscar," JIANDONG CHEN, aka "Little Tiger," JUN LI, XIN WANG and YOUFEI GONG, aka "Mark," and others known and unknown to the grand jury, did knowingly conspire, and agree:

a. to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is conspiracy to commit wire and mail fraud, with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to commit wire and mail fraud, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting

6

to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

17. The allegations contained in Counts 1 and 2 are realleged herein and incorporated as a part hereof for purposes of seeking forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 982(a)(2)(A), and 2328 and Title 28, United States Code, Section 2461(c).

18. Upon conviction of the offense set forth in Count 1 of this Indictment, and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 2328(a), and Title 28, United States Code, Section 2461(c), defendants ZHAO WANG, aka "Oscar," JIANDONG CHEN, aka "Little Tiger," JUN LI, XIN WANG and YOUFEI GONG, aka "Mark," shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable to the violation and all equipment, software, and other technology used and intended to be used to commit and to facilitate the commission of the offense.

19. Upon conviction of the offense set forth in Count 2 of this Indictment, defendants ZHAO WANG, aka "Oscar," JIANDONG CHEN, aka "Little Tiger," JUN LI, XIN WANG and YOUFEI GONG, aka "Mark," shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal, involved the offense, and any property traceable to such property.

20. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

7

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 982(b) and 2328(b), and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendants up to the value of the property listed above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), 982(a)(2)(A), 2328 and Title 28, United States Code, Section 2461(c).

DATED: June 21, 2024.

TARA K. McGRATH
United States Attorney

By: _____
    P. KEVIN MOKHTARI
    Assistant U.S. Attorney

8